UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Sheila Evans,<br><br>   Plaintiff,<br><br>v.<br><br>Business Development Sales, Inc., d/b/a BDS Laundry Systems, BDS Laundry Management Company, d/b/a BDS Laundry, and BDS Laundry Commercial Solutions,<br><br>   Defendants. | Case No. 21-cv-01046 (SRN/HB)<br><br><br>**ORDER ON MOTION FOR LEAVE TO AMEND COMPLAINT** |

This matter is before this Court on Plaintiff Sheila Evans's Motion for Leave to Amend the Third Amended Complaint [ECF No. 49]. For the reasons set forth below, the Court grants the motion.

**I.   Background**

In April 2021, Plaintiff Sheila Evans filed a First Amended Complaint in Dakota County District Court, asserting eleven causes of action based on allegations that Defendants violated various provisions of the Emergency Paid Sick Leave Act (EPSLA), the Family and Medical Leave Act (FMLA), the Americans with Disabilities Act (ADA), the Minnesota Human Rights Act (MHRA), and Minnesota Statutes § 144.4196. (*See generally* 1st Am. Compl. [ECF No. 1-1].) The complaint included in its Prayer for Relief a request "[f]or Leave of the Court to amend the complaint to add a claim for

1

punitive damages." (*Id.* at 19 ¶ K.)[1]  Defendants removed the case to federal court. (ECF No. 1.)

Plaintiff has amended her complaint twice since the case was removed; the currently operative complaint is the Third Amended Complaint (3rd Am. Compl. [ECF No. 39].)  In the Third Amended Complaint, Plaintiff alleges she worked for Defendants as an administrative assistant beginning in 2015. (*Id.* ¶ 47.)  During the night of July 14, 2020, Plaintiff's husband developed a fever and flu-like symptoms.  The next morning, Plaintiff notified Defendants' Administrative Manager, Nicole Crow, and an administrative assistant, Karen Olive, of her illness. Plaintiff was then told that Defendants' CFO, Sandy Englund, had directed that Plaintiff should stay home from work, and that Englund believed Plaintiff and her husband should be tested for COVID-19. (*Id.* ¶¶ 48–53.)  Both were tested. (*Id.* ¶ 53.)

While they were awaiting results of that testing, Plaintiff's husband continued to experience symptoms, and Plaintiff herself developed flu-like symptoms. (*Id.* ¶¶ 54–55.) Plaintiff notified Crow and Olive of her symptoms and over the next several days continued to keep them informed of her and her husband's health while they awaited the COVID-19 test results. (*Id.* ¶¶ 56–58.)  Plaintiff notified them when her husband tested positive for COVID-19. (*Id.* ¶ 59.)  She continued to update them when her own symptoms worsened, resulting in trips to urgent care and the emergency room where she

---

[1] Page number references to Plaintiff's amended complaints and proposed amended complaint are to the pagination of the document itself, not to the pagination applied by the CM/ECF system.

2

was again tested. On July 25, she tested positive for COVID-19. (*Id.* ¶¶ 59–63.) She notified Crow and Olive the same day, and further reported that she was having trouble breathing.

On July 27, 2020, Plaintiff received a letter from the Minnesota Department of Health advising her to quarantine until at least August 4, 2020, and stating that after August 4 she could return to work if she had not had a fever or taken fever-reducing medication in the past 24 hours and noticed improvement in her other symptoms. (*Id.* ¶ 65.) The letter further stated, "Employers should be aware that Minnesota state law (Minnesota Statutes section 144.4196) provides employment protections when a person is in isolation for public health purposes." (*Id.*) Plaintiff forwarded the letter to Crow and Englund. (*Id.* ¶ 66.)

On August 5, 2020, Plaintiff notified Crow and Olive that she was feeling much better. (*Id.* ¶ 67.) On August 6, however, Englund and Vice President of Operations Karen Ganter called Plaintiff to tell her she was being furloughed until September. (*Id.* ¶ 69.) In the meantime, other less experienced employees, including at least one recently hired administrative assistant, continued working for Defendants. (*Id.* ¶ 71.) On September 10, 2020, Defendants sent a letter, signed by Englund, terminating Plaintiff. (*Id.* ¶ 72.)

The Third Amended Complaint reiterates the counts for violations of the EPSLA, FMLA, ADA, MHRA, and Minnesota Statutes § 144.4196. Specifically, the Third Amended Complaint alleges that Defendants: (1) discriminated against Plaintiff in violation of the EPSLA (*id.* ¶¶ 75–87) (Count I), (2) failed to restore her to her position

in violation of the EPSLA (*id.* ¶¶ 88–95) (Count II), (3) discriminated against her because she or a family member was in quarantine, in violation of Minnesota Statutes § 144.4196 (*id.* ¶¶ 96–103) (Count III), (4) interfered with and denied her rights under the FMLA (*id.* ¶¶ 104–115) (Count IV), (5) discriminated against her in violation of the FMLA (*id.* ¶¶ 116–127) (Count V), the ADA (*id.* ¶¶ 128–136) (Count VI), and the MHRA (*id.* ¶¶ 137–146) (Count VII), (6) retaliated against her in violation of the ADA (*id.* ¶¶ 147–154) (Count VIII) and the MHRA (*id.* ¶¶ 155–162) (Count IX), and (7) discriminated against her by reason of her association with a disabled person, in violation of the ADA (*id.* ¶¶ 163–173) (Count X) and the MHRA (*id.* ¶¶ 174–184) (Count XI). The Third Amended Complaint also reiterated in its Prayer for Relief the request "[f]or Leave of the Court to amend the complaint to add a claim for punitive damages." (*Id.* at 26 ¶ K.)

      The Court entered a Pretrial Scheduling Order on May 27, 2021, setting a deadline of December 1, 2021, to file motions to amend the complaint to add a claim for punitive damages. (PSO at 2 [ECF No. 16].) In November 2021, Plaintiff met and conferred with Defendants about whether they would stipulate that she could file an amended complaint adding a claim for punitive damages plus factual allegations to support that claim. Defendants refused to agree to the stipulation, but the parties agreed to seek resolution through this Court's IDR process. Accordingly, Plaintiff filed an IDR request letter describing the dispute on December 1, 2021. (Dec. 1, 2021, IDR Ltr. [ECF No. 46].) After consultation with the District Judge, the Court informed the parties that the dispute was not one the Court could hear through the IDR process, so the Court set a briefing

schedule for a motion to amend pursuant to Local Rule 7.1(b). (Dec. 15, 2021 Minutes [ECF No. 47].) A hearing on Plaintiff's motion was held on February 8, 2022. [ECF No. 72.]

Plaintiff seeks leave of Court to amend her complaint to seek punitive damages under Minnesota Statutes § 144.4196.[2] Her Proposed Fourth Amended Complaint (PFAC), filed in "clean" version as Exhibit 1 to the Declaration of Elizabeth Binczik, and in "redline" as Exhibit 2 to that declaration, explicitly adds a claim for punitive damages to the prayer for relief. (PFAC at 27 ¶ K [ECF No. 51-1 at 56].) She also seeks to include additional factual allegations (PFAC at 10–12 [ECF No. 51-1 at 39-41]), which she argues provide necessary factual support for the punitive damages claim under Minnesota Statutes § 144.4196 and further support for her existing punitive damages claims under the MHRA. (Pl.'s Mem. Supp. Mot. Amend at 5, 9 [ECF No. 50].)

---

[2] Plaintiff maintains that her operative complaint already incorporates claims for punitive damages under the MHRA and under the ADA and EPSLA. She notes that she had previously included in her Prayer for Relief a claim for "all damages and other legal and equitable relief permitted for violations" of those acts (*see* 3rd Am. Compl. at ¶¶ B, C, F, G, H, I), and none of those acts incorporates into their remedial provisions Minnesota Statutes § 549.191, which requires a plaintiff to file a separate motion to add a claim for punitive damages. Minnesota Statutes § 144.4196, on the other hand, does refer to § 549.191, and therefore arguably requires that a separate motion be filed to amend the complaint to add a claim for punitive damages for violation of that statute. (*See* Pl.'s Mem. Supp. Mot. Amend at 4–5 [ECF No. 50].) While Defendants' response to the motion does not explicitly address Plaintiff's position that claims for punitive damages under the MHRA, ADA, and EPSLA are already in the operative complaint, they do not dispute it, and their arguments on futility address only § 144.4196. Accordingly, the Court will view the operative complaint as including claims for punitive damages under the MHRA, ADA, and EPSLA, and will treat the instant motion as seeking to add punitive damages to the prayer for relief only in connection with Plaintiff's claim under Minnesota Statutes § 144.4196.

## II. Standard of Review

Rule 15 of the Federal Rules of Civil Procedure provides that a party may amend its pleading once as a matter of course within twenty-one days after serving it or twenty-one days after service of a responsive pleading or motion under 12(b), (e), or (f). "In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). The rule requires the court to "freely give leave" to amend "when justice so requires." *Id.* Even though this is a liberal standard, parties do not have an absolute right to amend at any time. *Sherman v. Winco Fireworks, Inc.*, 532 F.3d 709, 715 (8th Cir. 2008). A motion to amend may be denied for "compelling reasons such as undue delay, bad faith, or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the non-moving party, or futility of the amendment." *Id.*

Here, Defendants argue the motion should be denied both because it was untimely and because it would be futile. (Defs.' Mem. Opp'n Mot. Amend at 7, 10 [ECF No. 63].)

## III. Discussion

### A. Plaintiff's Motion to Amend Is Timely.

Relevant to the timing of motions to amend the pleadings, the Pretrial Scheduling Order states:

> 1. Any motion that seeks to amend or supplement the pleadings (other than to add a claim for punitive damages) or to add parties, must be filed and served on or before August 27, 2021.
>
> 2. Any motion that seeks to amend the pleadings to add a claim for punitive damages or bad faith damages, if applicable, must be filed and served on or before December 1, 2021.

6

(PSO at 2.)

Defendants agree that Plaintiff's motion to add a claim for punitive damages under Minnesota Statutes § 144.4196 is timely. (Defs.' Mem. Opp'n Mot. Amend at 10, n. 1).[3] However, they argue the motion is untimely insofar as it seeks leave to add new factual allegations because the scheduling order set a deadline of August 27, 2021, for motions to amend the complaint other than to add a claim for punitive damages. They argue, therefore, that Plaintiff has not shown good cause for her failure to move prior to August 27 to add those new allegations to her complaint. (*Id.* at 7–10.)

When a motion to amend a pleading is brought after the court-ordered deadline, Plaintiff bears the heavier burden of showing good cause under Rule 16 to, in effect, amend the scheduling order. Fed. R. Civ. P. 16(b)(4); *Sherman*, 532 F.3d at 716. "The primary measure of good cause is the movant's diligence in attempting to meet the [scheduling] order's requirements." *Sherman*, 532 F.3d at 716. Whether the plaintiff has demonstrated good cause must be assessed before turning to the propriety of the amendment under Rule 15. *Id.* If the movant shows diligence, the court may then consider the prejudice that would be caused to the nonmovant if the amendment is allowed and weigh it against the prejudice to the movant if the amendment is not allowed. *Id.* at 717; *Bell v. Allstate Life Ins. Co.*, 160 F.3d 452, 454 (8th Cir. 1998). On the other hand, if the movant does not show diligence, the court does not reach the issue of

---

[3] Although Plaintiff's formal motion was not filed until January 6, 2022, Plaintiff had filed her letter requesting resolution by IDR and had no prior reason to know the Court would not agree to resolve the dispute by that means.

7

prejudice. *Sherman*, 532 F.3d at 717 (citing *Bradford v. DANA Corp.*, 249 F.3d 807, 809 (8th Cir. 2001)).

Plaintiff argues the additional factual allegations were included to provide the necessary basis for the punitive damages claim she seeks to assert. Defendants contend in response that it is an "unsupported and preposterous theory that a motion for leave to amend provides carte blanche to include any additional facts needed to justify the motion." (*Id.* at 8.) But adding facts to a complaint to support a punitive damages claim is not only not "preposterous," it is routine and uncontroversial in this District. *See, e.g., Sadeghi-A v. Daimler Trucks N. Am. LLC*, Case No. 19-CV-2373 (MJD/ECW), 2021 WL 856919, at *8, 22–26 (D. Minn. Mar. 8, 2021) (treating as timely a motion to amend for punitive damages when plaintiff filed it on the deadline for such motions and added factual allegations to the complaint to support the claim); *Hunter v. Ford Motor Company*, Case No. 08-cv-4980 (PJS/JSM), 2010 WL 11537516 at *1 (D. Minn. Jan. 7, 2010) (allowing Plaintiff to file an amended complaint to add a claim for punitive damages and supporting facts).

Defendants rely on *Hellquist v. Progressive Preferred Insurance Co.*, Case No. 16-cv-779 (RHK/KMM), 2017 WL 10456415, at *1 (D. Minn. 2017), but it does not support their argument. In *Hellquist*, the plaintiff moved to amend his complaint to add a claim for attorney's fees well past the deadline in the scheduling order. He argued his motion was timely because he filed it within the deadline for filing a motion for leave to assert punitive damages. *Id.* The court rejected that argument and denied the motion to amend. *Id.* The court noted that the later deadline to assert punitive damages was a

8

narrowly tailored exception to the earlier deadline for motions to amend the pleadings generally, and that the plaintiff's reading that the later deadline "should include motions to add claims that are plainly distinct from punitive damages claims would vitiate the explicitly included early deadline for amendments." *Id.*

*Hellquist* merely stands for the unremarkable proposition that the addition of claims unrelated to punitive damages are, absent a showing of good cause, untimely if filed after the general deadline for motions to amend the pleadings. *Id.* But unlike the plaintiff in *Hellquist*, Plaintiff here seeks to add factual allegations explicitly to support her claim for punitive damages, not to add a claim clearly distinct from punitive damages. *Hellquist* does not support Defendants' position, and Defendants offer no other support for the proposition that Plaintiff's motion is untimely regarding her request for leave to add factual allegations to support her undisputedly timely claim for punitive damages.

### B.  Plaintiff's Motion Is Not Futile.

Defendants next argue that even if the motion is timely, the amendment would be futile. (Defs.' Mem. Opp'n Mot. Amend at 10–11.)

#### 1.  Plausibility Is the Proper Standard for Determining Whether Plaintiff's Proposed Claim for Punitive Damages Would Be Futile

For purposes of Rule 15, futility "means the district court has reached the legal conclusion that the amended complaint could not withstand a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure." *Cornelia I. Crowell GST Trust v. Possis Med., Inc.*, 519 F.3d 778, 782 (8th Cir. 2008). An "amendment is not futile if the proposed amended complaint contains sufficient factual matter, accepted as true, to state

a claim to relief that is plausible on its face." *Dolphin Kickboxing Co. v. Franchoice, Inc.*, 335 F.R.D. 393, 401 (D. Minn. 2020). "A claim is facially plausible when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 397. "[T]he Court must take the well-pleaded allegations of a claim as true, and construe the pleading, and all reasonable inferences arising therefrom, most favorably to the pleader." *Id.*

But Minnesota law provides that, unless otherwise authorized, a plaintiff may not seek punitive damages upon commencement of a suit. Instead, a party must later move to amend the pleadings to claim punitive damages and must include with the motion "one or more affidavits showing the factual basis for the claim." Minn. Stat. § 549.191. The court must then determine whether there is prima facie evidence to support the motion, and it may only grant the motion if it finds such evidence. *Id.*

For cases filed in federal court, therefore, the question arises whether Federal Rule 15 or Minnesota Statutes § 549.191 provides the procedural framework for motions to amend to add a claim for punitive damages arising out of a state law cause of action. That question has been the subject of recent case law development in this District, and the trend of decisions, while not unanimous, has been to conclude that Rule 15 controls. *See, e.g., Dolphin Kickboxing*, 335 F.R.D. at 397–401 (concluding after thorough analysis of Supreme Court precedent on the application of state procedural rules in federal court that Rule 15, not the process described by § 549.191, controls for motions to amend for Minnesota state law punitive damages). The undersigned has reached the same conclusion. *See Shank v. Carleton Coll.*, 329 F.R.D. 610, 612 (D. Minn. 2019). For the

reasons articulated in those and other cases, the Court finds again here that Rule 15 and the case law interpreting that rule, not Minnesota Statutes § 549.191, provide the applicable procedural framework for this motion.

It follows, therefore, that Defendants' argument that the Court must deny this motion if Plaintiff does not present clear and convincing *evidence* must be rejected. (Defs. Mem. Opp'n Mot. Amend at 12–14.) Rule 15 contains no requirement that proof be adduced in support of the motion. Rather, the PFAC must "plausibly allege[] facts showing that the acts of Defendants show deliberate disregard for the rights or safety of others." *Dolphin Kickboxing*, 335 F.R.D. at 401. Therefore, the Court turns next to that assessment.

> **2.    The PFAC Plausibly Alleges Facts That Would Support Plaintiff's Entitlement to Punitive Damages for Violation of Minnesota Statutes § 144.4196**

While the Court has found that the *procedural* framework of Minnesota Statutes § 549.191 does not govern here, there is no question that Minnesota law establishes the *substantive* elements of a claim for punitive damages associated with a cause of action arising under Minnesota law. Thus, an assessment of futility here hinges on whether the allegations of the PFAC state a plausible claim under Minnesota law for punitive damages arising from Defendants' alleged violation of Minnesota Statutes § 144.4196.

Punitive damages are available "upon clear and convincing evidence that the acts of the defendant show deliberate disregard for the rights or safety of others." Minn. Stat. § 549.20 subd. 1(a). The statute continues:

11

> (b) A defendant has acted with deliberate disregard for the rights or safety of others if the defendant has knowledge of facts or intentionally disregards facts that create a high probability of injury to the rights or safety of others and:
>
>> (1) deliberately proceeds to act in conscious or intentional disregard of the high degree of probability of injury to the rights or safety of others; or
>>
>> (2) deliberately proceeds to act with indifference to the high probability of injury to the rights or safety of others.

*Id.* subd. 1(b). Therefore, the Court must assess "whether the allegations in the proposed amended complaint plausibly allege that Defendants knew of facts, or intentionally disregarded facts, that created a high probability that Defendants' actions would harm the rights or safety of Plaintiffs." *Dolphin Kickboxing*, 335 F.R.D. at 401.

Minnesota law forbids employers from discharging, disciplining, threatening, penalizing, or otherwise discriminating against an employee because the employee has been in isolation or quarantine or has responsibility for the care of a disabled or vulnerable adult who is in isolation or quarantine. Minn. Stat. § 144.4196, subd. 2.

Plaintiff alleges that at the direction of Defendants she stayed home from work starting July 15, 2020, after her husband became ill with COVID-19-like symptoms. (PFAC ¶¶ 48–52 [ECF No. 51-1].) Ten days later she tested positive for COVID-19 and was advised in a letter by the Minnesota Department of Health to quarantine until at least August 4. (*Id.* ¶ 56–65.) That letter, which Plaintiff forwarded to Crow (Defendants' Administrative Manager) and Englund (Defendants' CFO), further stated that "[e]mployers should be aware" that Minnesota law provides employment protections when an employee quarantines for public health purposes. (*Id.* ¶¶ 65–66.) Plaintiff's

12

PFAC adds the allegation that Englund in turn forwarded the letter to President and Chief Executive Officer David DeMarsh and Executive Vice President Danielle DeMarsh-Palmeri.  (*Id.* ¶¶ 11, 27, 67.)  Plaintiff notified Crow that she was ready to return to work on August 5.  (*Id.* ¶ 67.)  Nevertheless, Englund and Vice President of Operations Ganter furloughed Plaintiff on August 6, and Englund sent a letter terminating Plaintiff on September 10, 2020.  (*Id.* ¶¶ 70–73.)  Plaintiff also alleges that throughout her employment she "performed well and had no documented performance issues" (*id.* ¶ 47), that Plaintiff's supervisor did not participate in the decision to furlough her (*id.* ¶ 71), and that during Plaintiff's furlough, Defendants allowed less experienced employees, including less experienced administrative assistants, to continue working. (*Id.* ¶ 72.)

The PFAC also adds the following allegations:

> 76. During all relevant times herein, Defendants knew that it was unlawful to discriminate against employees, including because of their disability status or because of their COVID-related absences.
>
> 77. During all relevant times herein, Defendants' employee handbook, which was introduced and signed by President David DeMarsh, stated that Defendants would not discriminate on the basis of disability or any other characteristic protected by law and that Defendants' anti-discrimination policy applied to all aspects of employment, including selection, job assignment, and termination.
>
> 78. During all relevant times herein, Defendants' employee handbook stated that Defendants would not discriminate against a qualified employee or applicant with regard to any terms or conditions of employment because of such individual's disability and that Defendants would provide reasonable accommodations to a qualified individual with a disability so long as the accommodations did not constitute an undue hardship.

13

79. During all relevant times herein, Defendants' employee handbook stated that employees who had questions or concerns about any type of discrimination in the workplace or about reasonable accommodations should contact Chief Financial Officer Ms. Englund.

80. During all relevant times herein, Defendant's employee handbook stated that employees could raise concerns related to discrimination or accommodations without reprisal.

81. Defendants knowingly disregarded their own policies and discriminated and retaliated against Plaintiff.

82. Defendants acted with deliberate disregard for Plaintiff's rights.

83. Defendants had knowledge of facts and intentionally disregarded facts that created a high probability of injury to Plaintiff's rights.

84. Defendants deliberately acted in conscious and intentional disregard of the high degree of probability of injury to Plaintiff's rights.

85. Defendants deliberately acted with indifference to the high probability of injury to Plaintiff's rights.

86. Defendants engaged in discriminatory and retaliatory practices and acted with malice and reckless indifference to Plaintiff's rights.

(*Id.* ¶¶ 76 – 86.)

Defendants argue the allegations in Plaintiff's PFAC, taken together, do not plausibly allege that they or the specific decision-makers named in the complaint knew that Plaintiff had a right under Minnesota Statutes § 144.4196 to not be penalized for having been in quarantine. (Defs.' Mem. Opp'n Mot. Amend at 13–14.) They argue they cannot have deliberately disregarded her rights if they did not know she had those rights,

14

and therefore Plaintiff's allegations do not allege the facts necessary to assert a plausible claim for punitive damages. (*Id.*) They also argue that Plaintiff's PFAC does not identify the basis for the decision to fire her, so it fails to allege sufficiently or plausibly that Defendants fired her for an illegal discriminatory or retaliatory reason, let alone that they did so with intentional disregard of her rights. (*Id.* at 15.)

As to the first argument, the Court finds the PFAC plausibly alleges that Defendants knew of Plaintiff's right under Minnesota Statutes § 144.4196, subd. 2 that her employer not fire or penalize her because she had been in isolation or quarantine. The PFAC alleges DeMarsh, Englund, and DeMarsh-Palmeri received the letter from the Minnesota Department of Health because Plaintiff sent it to Englund, and Englund sent it on to DeMarsh and DeMarsh-Palmeri. The letter clearly explained that Plaintiff was subject to an isolation order and entitled to employment protections under Minnesota Statutes § 144.4196. They had the letter before they decided to furlough her and, later, to discharge her. Moreover, DeMarsh signed the employee handbook that explicitly stated that state and federal laws protect employees from discrimination and retribution based on legally protected characteristics. Englund performed human resources functions and was the first point of contact for employees with discrimination concerns. It is therefore plausible that these decision-makers, acting in their capacity as Defendants' executives, knew of or intentionally disregarded Plaintiff's right under Minnesota law to not be penalized in her employment for quarantining, and that if they took adverse action against her (i.e., by furloughing and then firing her) *because of her quarantine status*, they knew or intentionally disregarded that such action would violate her rights under the statute.

15

The more difficult argument, however, is whether the PFAC adequately alleges that Defendants actually furloughed and terminated Plaintiff because of her quarantine status. The causal connection is the core of the right under Minnesota Statutes § 144.4196. Even if an employer penalizes an employee who is or has quarantined, it only violates the statute if it acted "because" the employee was in quarantine or isolation. Minn. Stat. § 144.4196, subd. 2(a). Therefore, Plaintiff's punitive damages claim in this case necessarily requires as a predicate that Defendants furloughed and/or fired her because she quarantined. The PFAC does not contain an explicit factual allegation that Defendants acted because of Plaintiff's quarantine. The question is whether the facts that are alleged allow a plausible inference of that causal connection.

In *Metcalf v. Allina Health Sys.*, No. A20-1620, 2021 WL 4059660, at *5 (Minn. App. Sept. 7, 2021), the Minnesota Court of Appeals held in an analogous context, the Minnesota Whistleblowing Act (MWA)[4], that the causal connection "may be satisfied by evidence of circumstances that justify an inference of retaliatory motive, such as a showing that the employer has actual or imputed knowledge of the protected activity and the adverse employment action follows closely in time." *Id.* Establishing the prima facie causal connection is "not onerous." *Id.* at *4. Overturning a grant of summary judgment for the defendant, the Minnesota Court of Appeals concluded that the plaintiff had made a prima facie showing of causation for a violation of the MWA based on evidence that at

---

[4] The Minnesota Whistleblowing Act (MWA) protects an employee against adverse employment actions by an employer "because" the employee took one of several protected whistleblowing actions. Minn. Stat. § 181.932, subd. 1.

16

least two out of four of the employer's agents who participated in the decision to fire the plaintiff knew that she had filed multiple whistleblowing reports, and they decided to fire her within ten days of the last report. *Metcalf*, 2021 WL 4059660, at *5–6. The court concluded that a rational trier of fact could find a causal connection between the plaintiff's reports and the employer firing her. *Id.* at *6, 9.

Relatedly, in the context of a plaintiff's motion to amend punitive damages to a MWA claim, another court in this District has found it could plausibly infer causation because mere minutes separated the plaintiff sending a whistleblowing email to her employer and the employer calling her to summarily fire her. *Ramirez v. AMPS Staffing, Inc.*, Case No. 17-cv-5107 (DWF/BRT), 2018 WL 1990031, at *8 (D. Minn. Apr. 27, 2018).

Similarly, the Court concludes here that Plaintiff's PFAC plausibly alleges facts from which the inference can be drawn that Defendants took adverse action against her because she had been in quarantine. Defendants furloughed Plaintiff one day after she told them she was ready to come back to work. Having already concluded that Plaintiff's PFAC plausibly alleges Defendants knew of her right under Minnesota Statutes § 144.4196 not to be discharged or otherwise penalized because she was in quarantine, the Court concludes that the PFAC plausibly alleges the elements of a punitive damages claim for the alleged violation.

Accordingly, based on all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that Plaintiff's Motion for Leave to Amend the Third Amended Complaint [ECF No. 49] is **GRANTED** as set forth herein.

Dated: March 7, 2022

                                                    */s Hildy Bowbeer*
                                                    HILDY BOWBEER
                                                    United States Magistrate Judge